IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:17-cr-00419-AKK-TMP |
| | ) | |
| JOEL IVERSON GILBERT, | ) | |
| STEVEN GEORGE McKINNEY, | ) | |
| DAVID LYNN ROBERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## FINDINGS AND ORDER

This matter came on for an in-chambers hearing[1] on the government's *Motion for Inquiry into Potential Conflict of Interest* (Sealed Doc. 42) regarding the representation of defendant Steven George McKinney. Counsel for all parties appeared at the in-chambers hearing on November 9, 2017, as did defendant McKinney. The court heard the representations of counsel and conducted a colloquy with defendant McKinney to confirm the representation that he wished to make an informed, free, and intelligent waiver of the potential conflict of interest raised in the government's motion. Based on the representations of counsel, the

---

[1] The court allowed the government's motion to be filed under seal and itself conducted an in-chambers hearing because this issue touches upon the identity of a person who has testified before the grand jury but has not been charged. The court will refer to this person herein as S.B.

colloquy with defendant McKinney, and other matters filed with the court (Sealed Doc. 47), the court makes the following findings and conclusions.

Defendant McKinney is currently represented in this matter by attorneys David McKnight of the firm of Baxley, Dillard, McKnight, James & McElroy in Birmingham and Craig A. Gillen of the firm of Gillen Withers & Lake LLC in Atlanta, Georgia. During the initial phases of the investigation leading to the indictment, McKnight also represented a witness, S.B., who testified before the grand jury. When defendant McKinney sought to retain McKnight to represent him, McKnight recognized that a potential or actual conflict of interest existed between the witness, S.B., and McKinney. To deal with the conflict, McKnight referred S.B. to separate legal counsel for advice as to whether S.B. would or should agree to waive any conflict of interest created by McKnight's representation of McKinney. McKnight also sought a waiver from McKinney. Filed as Sealed Doc. 47 is a letter from S.B. to McKnight in which S.B. consents to McKnight's representation of McKinney, as well as his "continued representation" of S.B. in this matter, and in which S.B. explicitly waives any conflict of interest.[2]

---

[2] While the letter generally discusses the Alabama Rules of Professional Conduct related to conflicts of interest between current and former clients, see Ala. Rules Prof'l Conduct r. 1.7—1.9 (2016), it is not clear from the letter that S.B. was informed of or understood that such representation may implicate S.B.'s confidential communications to McKnight. That possibility is only vaguely hinted at by a reference to Ala. Rules Prof'l Conduct r. 1.9(b) (2016), which prohibits a lawyer from using "information relating to the representation to the disadvantage of the former client…." Nowhere in the letter, however, does S.B. acknowledge that McKnight has

2

Defendant McKinney is himself a lawyer, with more than thirty years of practice experience. While he has never been involved in a criminal matter before, he fully understands the ethical limits and duties of attorneys and how they impact a lawyer's representation of a client. He is well-educated, intelligent, and experienced in court matters, even if not in criminal matters. During the colloquy with the court, he stated that he has consulted with both of his attorneys, McKnight and Gillen, about the implications of McKnight's representation of S.B. for McKinney's defense. He understands that McKnight cannot use any information gained confidentially from S.B. to further McKinney's defense or to cross-examine or impeach S.B. as a potential witness against McKinney, and that this precludes sharing any such information with Gillen or anyone else on the defense team. Being fully informed of these ethical limitations, McKinney explicitly waived any potential conflict of interest and stated that he wanted McKnight to continue to represent him.

Counsel for McKinney represented to the court that they too recognize and understand the ethical limits imposed on McKnight. To avoid the problem of a conflict, McKnight and Gillen represented to the court that Gillen will handle any trial matters involving S.B., and that McKnight will not be involved in any such matters. To the extent that S.B. is questioned or cross-examined at trial, or his

---

knowledge of confidential communications between them which may become relevant in McKnight's representation of McKinney.

testimony is the subject of any motion, Gillen will handle those matters without input or assistance from McKnight.  Further, they represented to the court that McKnight will not disclose to Gillen or others on the defense team any information he gained from confidential communications with S.B.  As counsel put it, a "Chinese wall" had been erected between McKnight and the rest of the defense team with respect to S.B.'s information.  During the colloquy with the court McKinney stated that he understood how this embargo on information obtained from S.B. could disadvantage his defense by depriving it of potentially useful evidence or impeachment.  Nevertheless, he clearly and repeatedly stated his desire to be represented by McKnight and to waive any potential conflict of interest inherent in McKnight's representation of both S.B. and him.

    At the outset, the court must be clear in its task.  The court is not charged with addressing whether McKnight's representation of both S.B. and McKnight is ethically sanctionable conduct, or whether S.B. has been fully informed of the implications of his waiver.  What it is charged with doing is to make a determination whether McKnight's simultaneous representation will deprive McKinney of constitutionally effective counsel under the Sixth Amendment and whether it will undermine the integrity of the judicial process.

An actual conflict of interest that impairs counsel's ability to assist a criminal defendant implicates the Sixth Amendment right to effective counsel. The court of appeals recently reiterated this understanding:

> The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Wheat v. United States*, 486 U.S. 153, 158-59, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988). This right is violated when the defendant's counsel "has an actual conflict of interest that affects the defendant adversely." *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir. 1993). However, a criminal defendant may waive his right to conflict-free counsel. *United States v. Garcia*, 517 F.2d 272, 276 (5th Cir. 1975), abrogated on other grounds by *Flanagan v. United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984).

*United States v. Valdes*, 681 F. App'x 874, 876 (11th Cir. March 9, 2017); *see United States v. Saint Surin*, 477 F. App'x 683, 686 (11th Cir. 2012). The court explained that a waiver of conflict must be free and knowing, with a full understanding of the details of the conflict and its consequences. The court wrote:

> When made aware of a potential conflict of interest, the court should conduct an inquiry, akin to the plea colloquy under Federal Rule of Criminal Procedure 11, to determine whether a defendant wishes to waive the conflict. *Id*. at 278. During the hearing, the court should address the defendant "personally and forthrightly" about the potential consequences of the conflict and elicit a narrative response from the defendant that she has been advised of her right to effective counsel, understands the details of the potential conflict and its consequences, has discussed the matter with her attorney or an independent counsel, and voluntarily waives her right. *Id*. In order to be valid, a waiver must be not only voluntary, but also must be a "knowing, intelligent act[ ] done with sufficient awareness of the relevant circumstances

5

> *877 and likely consequences." *Id.* at 276 (quotation omitted). In order for a defendant's waiver to be knowing and intelligent, he must be informed "(1) that a conflict of interest exists; (2) the consequences to his defense from continuing with conflict-laden counsel; and (3) that he has a right to obtain other counsel." *Duncan v. State of Ala.*, 881 F.2d 1013, 1017 (11th Cir. 1989).

*United States v. Valdes*, 681 F. App'x 874, 876–77 (11th Cir. 2017) (citing *United States v. Garcia*, 517 F.2d 272, 276 (5th Cir. 1975), abrogated on other grounds by *Flanagan v. United States*, 465 U.S. 259, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984)). But even a valid, knowing, and free waiver need not be accepted by the court. *See United States v. Campbell*, 491 F.3d 1306, 1312 (11th Cir. 2007) ("[T]he district court was not required to accept [a defendant's] waiver [of counsel's actual conflict of interest.") Although the Sixth Amendment right to effective counsel also encompasses the right to counsel of choice, *see United States v. Seabury*, 507 F. App'x 836, 839 (11th Cir. 2013); *United States v. Ross*, 33 F.3d 1507, 1522 (11th Cir.1994) ("[A]n essential part of that right is the accused's ability to select the counsel of his choice."), that choice is not absolute, and counsel can be disqualified, despite a waiver by the defendant, where an actual conflict of interest will undermine the "fair, efficient, and orderly administration of justice." *United States v. Seabury*, 507 F. App'x 836, 839 (11th Cir. 2013).

In the instant case, the court finds that McKnight has an actual conflict of interest between his former client S.B. and his current client McKinney. The

government represented that S.B. will likely be a witness in the trial of this matter. Nevertheless, giving due weight to McKinney's Sixth Amendment right to counsel of choice and his knowing and voluntary waiver of the identified conflict, the court finds it is not necessary to disqualify McKnight. There are several reasons for this. First, McKnight and Gillen have advised the court that McKnight will not be involved in any way with the evidence or testimony offered by S.B. Any examination or cross-examination of S.B., or any motion or objection directed at S.B.'s evidence, will be handled entirely by Gillen, without assistance or input from McKnight. McKnight will remain behind a "Chinese wall" with respect to S.B. Unlike the attorneys in *Campbell*, Gillen and McKnight are members of *separate* firms. They are two separate and distinct attorneys, unassociated in any way, except that both have been retained by McKinney. The conflict impacting McKnight cannot be attributed to Gillen also.

Second, defendant McKinney is himself an attorney with over thirty years of practice experience. While this does not undercut his Sixth Amendment right to effective, conflict-free counsel, it does mean that he is better able than most criminal defendants to understand the nature of the conflict of interest, its consequences for his defense, and the implications of waiving it. The court is confident, based on both McKinney's experience and the court's colloquy with him, he understands that McKnight cannot use to his advantage any confidential

information obtained from S.B.  Indeed, McKnight cannot harm S.B.'s interests in any way.  If McKnight alone were representing McKinney, or representing him with a law partner, this would require McKnight's disqualification despite McKinney's knowing waiver.  But the presence of Gillen, who is not beholden to S.B. in any regard, protects McKinney's right to a full and vigorous defense and cross-examination of S.B.[3]  McKinney recognizes that Gillen does not possess confidential information from S.B. that might be useful in cross-examination, and he recognizes that McKnight cannot reveal or use any such information to S.B.'s detriment.  To the extent it might be argued that McKnight has a duty to McKinney to divulge whatever information he has that might be useful to him, McKinney has knowingly, freely, and voluntarily waived that duty because of its conflict with S.B.'s rights.

Acceptance of McKinney's knowing waiver of McKnight's conflict does not undermine the fair, efficient, and orderly administration of justice.  Gillen's presence as McKinney's co-counsel eliminates the possibility that McKnight must either divulge S.B's confidences or soften his cross-examination of a government

---

[3] The court cannot stress enough that McKnight may not divulge any confidential information from S.B. to Gillen.  McKnight must remain completely uninvolved in any pretrial or trial procedure implicating S.B., both directly and indirectly through Gillen.  This does not harm McKinney's representation because, even if McKnight were disqualified by the court, Gillen still would have no access to confidential information from S.B.  So long as McKnight remains uninvolved in anything related to S.B., his disqualification adds to or detracts nothing from McKinney's defense.  McKinney is in no different position that he would have been had he never retained McKnight or if McKnight were disqualified—he remains represented by separate, independent counsel.  As such McKnight's disqualification serves no purpose.

witness. As to S.B., McKnight never faces that dilemma.[4] The conflict never becomes actual under the circumstances existing in this case and as represented by the attorneys with regard to their future handling of it.

For the reasons and under the circumstances stated above, the court concludes that McKnight shall not be disqualified from his representation of McKinney.

DONE this 17th day of November, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE

---

[4] Although the waiver letter from S.B. leaves unclear whether he was advised of his right to have McKnight keep secret his confidential communications or that his waiver of McKnight's conflict of interest in representing him and McKinney might implicate the secrecy of those confidences, the danger of divulging confidences never becomes real in this case. McKnight, McKinney, and Gillen all recognize that S.B.'s confidential communications cannot be divulged by McKnight. S.B. loses nothing because of McKnight's representation of McKinney. Therefore, the lack of clear advice and a waiver regarding confidential communications does not undermine S.B.'s other waivers.