# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) <br> ) <br> v. ) <br> ) <br> **JOEL IVERSON GILBERT,** ) <br> **STEVEN GEORGE MCKINNEY,** ) <br> **DAVID LYNN ROBERSON,** ) <br> ) <br> Defendants. ) <br> ) | **Civil Action Number** <br> **2:17-cr-00419-AKK-TMP** |

## MEMORADUM OPINION AND ORDER

Before the court are Steven McKinney's and David Lynn Roberson's respective motions for a bill of particulars, docs. 56 and 62, and McKinney's Motion for Identification of the Specific Documents which the Government Expects to Introduce in its Case-In-Chief at Trial, doc. 63, which the court construes as a motion for a bill of particulars. The other defendants have adopted these motions. In a nutshell, the Defendants have requested that the Government identify and/or specify (1) all unlawful acts, including any "official acts" by Oliver Robinson, comprising the alleged conspiracy; (2) all unindicted co-conspirators and/or aiders and abettors; (3) more particular facts about the alleged agreement between Robinson and the Defendants; (4) the five companies to whom the EPA sent general notice letters, and the five corporations which allegedly contributed money to the Alliance for Jobs and the Economy ("AJE"); (5) the dates and

amounts of the invoices sent and payments made under the alleged conspiracy; and (6) all documents that the Government intends to use during its case-in-chief. Docs. 56; 62; 63. The Government opposes these requests. *See* docs. 75; 76. The court addresses each request below.

I.  **LEGAL STANDARD**

Criminal defendants are not entitled to "generalized discovery," *United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981), or "a detailed disclosure" of the Government's evidence, *Johnson v. United States*, 207 F.2d 314, 320 (5th Cir. 1953). However, courts may order the Government to file a bill of particulars where an indictment fails to "set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense." Fed. R. Crim. P. 7(f); *United States v. Cole*, 755 F.2d 748, 760 (11th Cir. 1985).[1] In effect, a bill of particulars "amplifies the indictment by providing additional information." *United States v. Johnson*, 575 F.2d 1347, 1356 (5th Cir. 1978). Unlike discovery, however, a bill of particulars "is not intended to provide the defendant with the fruits of the government's investigation," but rather "only that minimum amount of information necessary to permit the defendant to conduct *his own* investigation." *United States v. Torres*, No. 1:06-CR-00351-

---

[1] In *Cole*, the court noted that the purpose of a bill of particulars is threefold: (1) to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense; (2) to minimize surprise at trial; and (3) to enable him to plead double jeopardy in the event of a later prosecution for the same offense. *Cole*, 755 F.2d at 760.

WSD-LTW, 2008 WL 11380071, at *6 (N.D. Ga. Mar. 20, 2008), *report and recommendation adopted,* 2008 WL 11380103 (N.D. Ga. Oct. 9, 2008) (emphasis added). The decision to grant a motion for a bill of particulars is committed to the district court's sound discretion. *Will v. United States*, 389 U.S. 90, 99 (1967); *Cole*, 755 F.2d at 760 ("We will reverse a district court's refusal to grant a request for a bill of particulars only if it can be shown that the defendant was actually surprised at trial and thereby incurred prejudice to his substantial rights.").

## II. FACTUAL BACKGROUND

The indictment alleges that the Defendants concocted an illegal scheme to pay an Alabama state representative to oppose the EPA's proposals regarding a Superfund site. Doc. 1. In 2014, shortly after the EPA notified five companies that it was investigating their role in pollution around the 35th Avenue Superfund Site and that it was considering adding the site to the National Priorities List[2] and expanding it to include surrounding areas, the Defendants purportedly enlisted then-Alabama state representative Oliver Robinson. *Id.* In exchange for large monthly payments to his charitable organization, the Oliver Robinson Foundation, Robinson agreed to harness his influence to oppose the EPA's priority designation. *Id.* To conceal the source and purpose of the money, the Defendants purportedly

---

[2] Under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, the EPA is required to maintain a list of the hazardous waste sites most in need of cleanup, the National Priorities List. *See* 42 U.S.C. § 9605. Only sites listed on the NPL are eligible for Superfund-financed remedial action. *See* 40 C.F.R. § 300.425.

funneled many of the payments through the AJE, a sham corporation they created. *Id.* The Government alleges that the Defendants also directed Robinson to perform several "official acts" to oppose the EPA's proposals, including: (1) making public statements to pressure Alabama's state environmental agencies to oppose the designation; (2) meeting with EPA officials and advising that they withdraw their proposal; and (3) voting in a House Rules committee meeting to advance a joint resolution (that Defendant Gilbert had ghost-written) opposing the EPA's proposal. *Id.* Based on this alleged conduct, the Government charged Roberson, Gilbert, and McKinney with various crimes. *See* doc. 1.

## III. ANALYSIS

The Defendants contend that the indictment fails to provide adequate notice of the nature of the charges against them and lacks certain information necessary to prepare their respective defenses. As such, they have moved the court to direct the Government to file a bill of particulars. The court addresses each request below.

### A. The "official acts" that comprise the alleged bribery scheme

Based on *McDonnell v. United States*, which clarified the definition of an "official act" under the federal bribery statute, 136 S. Ct. 2355, 2371 (2016), the Defendants argue that the indictment fails to specify "the concrete governmental 'matter(s)' at issue, and how Mr. Robinson allegedly used the official powers of his office to act 'on' such matter(s)." Doc. 56 at 7-8. Depriving the Defendants of this

4

information, they argue, would force them "to devote substantial time and energy at trial to determine whether any of the Defendants paid Mr. Robinson" to perform actions that do not qualify as "official acts." Doc. 56 at 8.

A review of the indictment shows that it adequately identifies the "official acts" Robinson purportedly performed. As the Government notes, *see* doc. 76 at 8-10, the indictment alleges that the Defendants paid Robinson in exchange "for using his official position" to do the following:

> (1) make a public statement and pressure and advise [state environmental agencies] to take and maintain a position on behalf of the State of Alabama favorable to [the Defendants] in relation to EPA's [proposals]; (2) meet with and advise EPA officials to take a position favorable to [the Defendants] in relation to EPA's [proposals]; and (3) vote as a member of the [House] Rules Committee to [advance] the joint resolution . . . written by defendant[s].

Doc. 1 at 28-29. These purported actions undertaken by Robinson in furtherance of the alleged conspiracy are sufficient to prevent surprise at trial and allow the Defendants to prepare their defense. *See Cole*, 755 F.2d at 760. Moreover, an indictment is not designed to prove the Government's case; it merely needs to "track[] the statutory language" of the laws the Defendants allegedly violated. *See United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990); *Cole*, 755 F.2d at 760. Because the indictment here "tracks" the language of the corresponding statutes, the Defendants are not entitled to additional specifics regarding which acts

5

were performed in Robinson's official capacity.[3]

Relatedly, the Defendants also argue that the indictment fails to allege sufficient information about the unlawful acts occurring during the final seventeen months of the alleged conspiracy. *See* doc. 56 at 9-11. However, in conspiracy cases, the Government is not required "to provide defendants with all overt acts that might be proven at trial." *United States v. Rosenthal*, 793 F.2d 1214, 1227 (11th Cir.), *modified,* 801 F.2d 378 (11th Cir. 1986); *see also Colson*, 662 F.2d at 1391 (affirming trial court's decision to deny a motion for bill of particulars where the government proved overt acts at trial that were not included in the indictment). Moreover, contrary to the Defendants' assertions, the Government alleges more than a single act during the last seventeen months of the alleged conspiracy. Specifically, in addition to their alleged communications directing Robinson to oppose the EPA's proposal to his constituents, the indictment claims that the Defendants facilitated payments to the Oliver Robinson Foundation in 2016, doc. 1 at 9, and that Gilbert instructed his law firm's accounting department "to remove references to the Oliver Robinson Foundation" on certain invoices, *id.* at 27. These details provide the Defendants "with sufficient factual information to

---

[3] The Defendants also contend that they are entitled to "[p]articular facts and dates relating [to] Representative Robinson's alleged voting for the Joint Resolution." Docs. 62 at 9; 98 at 4. As the Government correctly points out, however, the Defendants already have this information, doc. 75 at 10, and, in fact, included a copy of the tally sheet from that vote—which includes the date of the vote—in a brief supporting a different motion. *See* doc. 66 at 6. This request is therefore due to be denied.

prepare [their] defense as to the [alleged] illegal activity." *See United States v. Jones*, No. 1:11-CR-42-TCB-LTW, 2012 WL 4049449, at *6 (N.D. Ga. Aug. 3, 2012), *report and recommendation adopted,* 2012 WL 4049448 (N.D. Ga. Sept. 13, 2012). In that respect, the indictment here is different than the one in *United States v. Trie*, which the Defendants cite, *see* doc. 95 at 5, where "portions of the indictment [we]re difficult to follow" and the indictment failed to identify the property the Government maintained the defendant obtained fraudulently. *See* 21 F. Supp. 2d 7, 22 (D.D.C. 1998).

### B. All unindicted co-conspirators and/or aiders and abettors

The Defendants also seek the names of any unindicted co-conspirators and/or aiders and abettors. Docs. 1 at 9; 56 at 11; 62 at 4; 95 at 7. Again, the Defendants have no right to wholesale discovery of the Government's witness list. *See United States v. Anderson*, 799 F.2d 1438, 1442 (11th Cir. 1986) (allowing a defendant to obtain a list of government witnesses or unindicted co-conspirators through a "bill of particulars" would frustrate Rule 16(b)'s restriction on discovery). Moreover, the Government has represented previously that there are no known unindicted co-conspirators, *see* doc. 56 at 13, a fact that "remains true today," *see* docs. 75 at 6; 76 at 8. In other words, the Defendants' request is moot. *See United States v. Surles*, No. 1-08-CR-345-03-CC/AJB, 2009 WL 10670624, at *4 (N.D. Ga. Feb. 25, 2009) ("[T]he government has stated that it is unaware of

any other unindicted coconspirators, which responds to defendant's request for the identities of the 'others' listed in the indictment.").

**C. Additional particular facts regarding, and dates of, the alleged agreement between Robinson and the Defendants**

The Defendants next contend that they are entitled to more particularized facts regarding the alleged agreement to form the conspiracy. Docs. 62 at 7-11; 98 at 6. But, as the Government correctly notes, doc. 75 at 8-9, "[a] bill of particulars may not be used to compel the government to provide the essential facts regarding the existence and formation of a conspiracy" or "all overt acts that might be proven at trial." *Rosenthal*, 793 F.2d at 1227. Likewise, the Defendants cannot use a motion for a bill of particulars to basically seek "conversations and activities in which [they allegedly] participated," *see Cole*, 755 F.2d at 760, and for which they cannot credibly claim any surprise, *see United States v. Cantu*, 557 F.2d 1173, 1178 (5th Cir. 1977) ("Cantu could hardly have been surprised by" witness testimony regarding "conversations in which Cantu participated.").

**D. The names of the companies referenced in the indictment**

The Defendants request also "the names of the five companies" to whom the EPA sent general notice letters and which allegedly contributed to the AJE. *See*

docs. 62 at 5-6; 98 at 5. The letters the EPA disseminated are publicly available,[4] and the Defendants are not entitled to a bill of particulars "with respect to information which is already available through other sources." *See Rosenthal*, 793 F.2d at 1227. Likewise, as to the alleged contributors to the AJE, based on the indictment's contention that the Defendants created and solicited contributions for AJE, doc. 1 at 8, these are "activities in which [the Defendants allegedly] participated," *see Cole*, 755 F.2d at 760. In short, no credible basis exists for the Defendants to claim any surprise over the EPA letters or the names of any contributing corporations.

### E. The dates and amounts of the invoices sent and payments made under the alleged conspiracy

The Defendants also seek the "[p]articular dates and amounts of the alleged invoices and payments" referenced in paragraphs 25, 26, and 28 of the indictment. These paragraphs allege that Gilbert and McKinney's law firm submitted payments to the Oliver Robinson Foundation and then sent invoices to Roberson's employer for identical amounts. Docs. 62 at 6; 98 at 5-6. The court agrees with the Government that specifying every individual payment or invoice is not necessary for the Defendants to prepare their defense, especially since they were allegedly involved in effectuating the payments. Doc. 75 at 8. Because these are "activities

---

[4] *See* United States Environmental Protection Agency, *General Notice Letters Sent to PRPs*, available at https://www.epa.gov/north-birmingham-project/general-notice-letters-sent-prps (last visited May 3, 2018).

in which [the Defendants allegedly] participated," *see Cole*, 755 F.2d at 760, the Defendants should already have access to this information.

### F. Documents the Government intends to use at its case in chief at trial

Finally, the Defendants submit a catchall request for the Government to identify "documents that it intends to use at its case-in-chief at trial," stating that the Government seeks to "inundate" them with a "massive amount of discovery." Docs. 56 at 15; 63 at 7; 95 at 8-11. As they put it, the Government has produced a "document dump" of over 1,700,000 pages of documents, much of which has "either no or minimal relevance." Docs. 63 at 2-3; 95 at 1. The court disagrees. As Judge T. Michael Putnam previously explained in another case:

> [T]he plain language of Rule 16(a)(1)(E)(ii) does not require the Government to *specify* from among the universe of discovery documents produced to defendant which of those documents it intends to rely upon at trial. Rule 16(a)(1)(E) describes three categories of documents the Government must turn over to the defendant during discovery: documents material to the defense, documents the Government intends to use in its "evidence in chief," and documents taken from or belonging to the defendant. So long as the Government fulfills its discovery obligation to produce all documents fitting into any one of these three categories, it cannot be put at hazard for failing to correctly *categorize* the documents it produces. . . . The rule does not impose a duty on the Government to tip its hand prematurely by requiring it to give the defendant a roadmap of its strategy.

*United States v. Scrushy*, No. CR-03-BE-530-S, 2004 WL 483264, at *3-4 (N.D. Ala. Mar. 3, 2004). In short, a bill of particulars is intended to prevent surprise by the *charges*, not the "evidence supporting" the charges. *See id.* Although the

"voluminous discovery" in this case will require counsel to devote many hours combing through the documents, the court factored this in when it continued the trial and set it for a date that accounted for counsel for the Defendants' other obligations.[5] *See* doc. 49 at 1-2. Furthermore, the court has ordered the Government to serve its exhibit list on the Defendants two weeks before trial, further blunting any possibility of surprise. Doc. 49 at 3-4. Lastly, similar to the *United States v. Campbell* case[6] the Defendants attached to their brief, *see* doc. 72-1, the Defendants here will have had over six months to review the documents, *see* doc. 49 at 3. And, as in *Campbell*, the specificity of the indictment should help to "guide and focus" the Defendants' review. *See* doc. 72-1.

---

[5] The Defendants also contend that navigating the documents will be particularly difficult because the vast majority "come from entities to which [the Defendants have] no connection." Doc. 95 at 9. As such, they worry that Government has "buried" some of the relevant documents among those 1,400,000 pages. However, the Government produced these records in electronic format. Although the Defendants complain that many of the documents contain handwritten notes, making it "[im]possible to conduct a proper keyword search," doc. 95 at 11, most of what the Defendants have received is unquestionably "text searchable discovery," *see United States v. Carpenter*, No. 3:13-CR-226(RNC), 2015 WL 9480449, at *2 (D. Conn. Dec. 29, 2015). The court is thus unpersuaded by this argument.

[6] The defendant in *Campbell* complained that the government had produced 280,000 pages of documents without specifying which ones it intended to use in its case-in-chief at trial. The court denied the motion for the bill of particulars, explaining that:

> The documents in this case have been available to Defendant [for over six months]. Furthermore, the government has provided Defendant with a twenty-seven page index to the documents which specifies the general nature of what is contained in the boxes of documents and the source of the documents in each box. Finally, as the government points out, the indictment provides a substantial degree of specificity regarding the allegations against Defendant which should also serve to guide and focus Defendant's examination of the documents produced.

*United States v. Campbell*, No: 1:04-CR-424-RWS-ECS at *4 (N.D. Ga June 3, 2005).

## CONCLUSION AND ORDER

Although knowing the precise manner in which the Government intends to prove its case "would, without question, allow [the Defendants] to better prepare [their] defense," the Defendants are not entitled to this information. *See United States v. Henderson*, No. 2:16-CR-0182-LSC-JEO, 2016 WL 5853743, at *3 (N.D. Ala. Aug. 17, 2016), *report and recommendation adopted,* 2016 WL 5816047 (N.D. Ala. Oct. 5, 2016); *Scrushy*, 2004 WL 483264, at *3-4. Indeed, the Defendants may not use a motion for a bill of particulars "to compel the government to [offer a] detailed exposition of its evidence or to explain the legal theories upon which it intends to rely at trial." *United States v. Burgin*, 621 F.2d 1352, 1359 (5th Cir. 1980). Nor can they use such a motion to obtain the Government's witness list or the documents it intends to use. *See Scrushy*, 2004 WL 483264, at *3-4. Therefore, consistent with this opinion, the Motions for Bill of Particulars, docs. 56 and 62, and the Motion to Compel Identification of the Specific Documents which the Government Intends to Use at its Case-In-Chief at Trial, doc. 63, are **DENIED**.

However, in the event that the Government subsequently learns of other unindicted co-conspirators, or aiders and abettors, and, to the extent that (1) it plans to call them as witnesses, *see United States v. White*, 846 F.2d 678, 693 (11th Cir. 1988), and (2) their identities are "essential [for Defendants] to understand[]"

the charges against them, *see Scrushy*, 2004 WL 483264, at *9, the court hereby **ORDERS** the Government to immediately file a bill of particulars disclosing their identities.

DONE the 4th day of May, 2018.

_____
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE