FILED
2018 May-04 PM 02:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:17-cr-00419-AKK-TMP** |
| **JOEL IVERSON GILBERT, STEVEN GEORGE MCKINNEY, and DAVID LYNN ROBERSON,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION AND ORDER

The court presently has before it David Lynn Roberson's Motion for Severance of Trials, doc. 59, pursuant to Rule 14 of the Federal Rules of Criminal Procedure. Roberson argues that he can only fully present a defense that includes calling his codefendants as witnesses if the court severs and sequences his trial to begin after his codefendants are sentenced or acquitted. Secondarily, he asserts that the Government's introduction of certain statements made by his codefendants will violate his rights under the Confrontation Clause if the court proceeds with a joint trial. After careful consideration of the parties' briefs, docs. 59; 73 and 104, and the relevant case law, Roberson's motion is due to be denied.

## I. **BACKGROUND**

In 2014 and 2015 the Environmental Protection Agency proposed adding an existing Superfund site in Birmingham, Alabama to the National Priorities List and expanding the site to include surrounding areas. Doc. 1 at 4–5. Entities deemed responsible for contamination at designated Superfund locations are potentially subject to significant costs associated with long-term environmental remediation. *Id.* at 5–6. The EPA identified Roberson's employer as a potential source for the contaminants in the existing Superfund location, as well as in the newly identified zones hypothetically encompassed by an expanded designation. *Id.* at 2, 4.

Roberson worked with his employer's outside counsel—Defendants Joel Gilbert and Steven McKinney—to plan a political response in opposition to the EPA's proposals. *Id.* at 7–8. As part of this response, Gilbert and McKinney's law firm signed a contract with the private foundation of former Alabama state legislator Oliver Robinson (hereafter "Robinson's Foundation"), and assisted Robinson in forming an organization, Get Smart Tarrant, to foment grassroots resistance to the EPA's actions. *Id.* at 8, 10–11, 27. Robinson also took a number of other actions in opposition to the EPA, including making appearances before state environmental agencies, meeting with EPA officials, and voting to advance a resolution, drafted by Defendant Gilbert and criticizing the EPA's proposed actions, out of committee in the Alabama legislature. *Id.* at 17–19, 24–26.

Roberson, along with Gilbert and McKinney, were subsequently indicted on a series of charges arising out of their involvement with Robinson. In his current motion, doc. 59, Roberson is seeking to sever his trial from his codefendants.

## II. LEGAL STANDARD

Rule 14(a) of the Federal Rules of Criminal Procedure provides that if the joinder of defendants at trial "appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." While the decision to sever "lies within the district court's sound and substantial discretion," *see United States v. Lopez,* 649 F.3d 1222, 1236 (11th Cir. 2011), the court must "balance the rights of the defendants and the government to a trial that is free from the prejudice that may result from joint trials against the public's interest in efficient and economic administration of justice." *United States v. Pepe*, 747 F.2d 632, 649 (11th Cir. 1984). Indeed, "[j]oint trials play a vital role in the criminal justice system and serve important interests: they reduce the risk of inconsistent verdicts and the unfairness inherent in serial trials, lighten the burden on victims and witnesses, increase efficiency, and conserve scarce judicial resources." *Lopez*, 649 F.3d at 1233 (citing *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). As a result, the general rule is that "defendants who are indicted together are usually tried together." *United States v. Browne*, 505 F.3d 1229, 1268 (11th Cir. 2007). That general rule "is even more

pronounced in conspiracy cases." *Lopez*, 649 F.3d at 1234 (citing *United States v. Beale*, 921 F.2d 1412, 1428 (11th Cir. 1991)). This preference is not invariable though, and a defendant may justify severance by "'demonstrat[ing] that a joint trial will result in specific and compelling prejudice to the conduct of [her] defense.'" *United States v. Schlei*, 122 F.3d 944, 984 (11th Cir. 1997) (quoting *United States v. Walker*, 720 F.2d 1527, 1533 (11th Cir. 1983)). But, "[t]o show compelling prejudice, a defendant must establish that a joint trial would actually prejudice the defendant and that a severance is the only proper remedy for that prejudice—jury instructions or some other remedy short of severance will not work." *Lopez*, 649 F.3d at 1234 (citing *Zafiro*, 506 U.S. at 539–41). "[I]t is well settled that defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540.[1]

---

[1] Roberson argues that the "heavy burden" of demonstrating "compelling prejudice" applies only on appeal and that the district court's discretion is essentially unbounded. Doc. 104 at 3. As the Eleventh Circuit explained in *Lopez*, however, only a few "exceptional circumstances" justify deviating from the general rule that defendants charged with a common conspiracy should be tried together. *Lopez*, 649 F.3d at 1234. That the decision is committed to the district court's discretion simply means that there is a "range of possible conclusions the trial judge may reach." *United States v. Frazier*, 387 F.3d 1244, 1259 (11th Cir. 2004). It does not mean that the district court is free to make any decision it desires. Instead, the court's discretion is framed by controlling law which provides the outer limits of acceptability and rationalizes the court's decision-making process. *See, e.g.*, *United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001) (explaining that the "framework for analyzing a motion to sever is well-established . . . [i]t is within [that] framework that" the circuit reviews the district court's treatment of the motion to sever).

## III. ANALYSIS

Roberson raises two main arguments in support of his motion: that a joint trial would (1) deprive him of a central pillar of his defense, i.e., that he relied in good faith on his codefendants' legal advice and therefore lacked the requisite intent to commit the charged crimes; and (2) violate his Sixth Amendment right to challenge his codefendants' grand jury testimony. The court will address each contention in turn.

### *A. Whether Separate Trials are Necessary for Roberson to Present a Defense*

"A defendant arguing for severance to permit a codefendant's exculpatory testimony must demonstrate: '(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the co-defendant would indeed have testified at a separate trial.'" *United States v. Green*, 818 F.3d 1258, 1280 (11th Cir. 2016) (quoting *United States v. Novaton*, 271 F.3d 968, 989 (11th Cir. 2001)). As Roberson explains in his motion, he intends to call his codefendants to testify that they advised him that the conduct forming the basis for the criminal charges here was lawful. Basically, Roberson wants to establish "the defense of good faith reliance on advice of counsel" to prove he lacked the requisite intent to commit the charged crimes. *See United States v. Eisenstein*, 731 F.2d 1540, 1543 (11th Cir. 1984). For such a defense, Roberson must show "that he relied in good faith after

first making a full disclosure of all facts that are relevant to the advice for which he consulted the attorney." *Id.* This includes both the advice Roberson received and the information he provided to his counsel. However, for the reasons stated below, Roberson's intent to call his lawyers to testify, standing alone, is insufficient to justify severance, particularly in light of Roberson's failure to provide the court with details regarding the specific testimony his codefendants will offer. *See Novaton*, 271 F.3d at 989–90.

First, other than the sweeping generalizations identified above, Roberson has offered no information to establish the requisite bona fide need for his codefendants' testimony. In fact, the record suggests that others may be able to provide essentially identical testimony. For example, Defendant Gilbert testified before the grand jury that he discussed the legality of the Defendants' agreement with Robinson's Foundation "internally with [his law firm's] ethics people," who concluded that it was lawful. *See* Doc. 104 at 5. Additionally, Gilbert told the grand jury that others at the law firm "were aware of [the] engagement" of Robinson on behalf of Roberson's employer, and Defendant McKinney testified that Gilbert told him that "the governmental affairs guys vetted [the agreement with Robinson's Foundation] and said it was okay." *Id.* at 5–6. Similarly, assuming others at Roberson's company were privy to information Roberson provided to counsel and the advice he received from his codefendants, Roberson

could presumably explore the substance of that information via their testimony. Put simply, Roberson has neither provided an explanation as to why other involved individuals could not provide virtually identical testimony to that of his codefendants regarding the legal advice Roberson received, nor explained why such testimony would prove inadequate. *See Green*, 818 F.3d at 1282 (explaining there was no bona fide need for testimony that other witnesses "could readily have provided").

Second, Roberson has provided no substantive details regarding the testimony his codefendants would provide. *See Novaton*, 271 F.3d at 990 ("[S]tatements concerning the testimony that would become available by severing trials must be specific and exonerative, rather than conclusory or self-serving, in order to justify severance"); *Green*, 818 F.3d at 1282 ("Bare assertions that a codefendant knows substantive facts are not themselves substantive facts"). At best, Roberson contends that his codefendants would testify as they did before the grand jury, i.e., by explaining that they believed the charged conduct was lawful and, presumably, that they provided Roberson with legal advice to that effect. *See* Doc. 104 at 6. But, as the Government notes, when they testified before the grand jury neither codefendant could recall specific discussions with Roberson regarding the legality of the agreement with Robinson or about the decision to hire Robinson's Foundation. *See* Doc. 73 at 5–6. Moreover, the proposed testimony

essentially repeats the codefendants' belief that they acted in accordance with the law, which is "in no way contrary to the [codefendants'] own interests," and, as such, is of "dubious credibility." *Green*, 818 F.3d at 1280–81 (quotations omitted).

Third, Roberson has provided no assurances that his codefendants would actually testify on his behalf. Indeed, Roberson fails to provide any indication that Gilbert or McKinney would forego their Fifth Amendment "privilege not to testify in a separate trial." *See United States v. Adams*, 1 F.3d 1566, 1579 (11th Cir. 1993) (affirming denial of motion to sever because the defendant provided no indication that his codefendant would testify at a separate trial). Instead, Roberson maintains that the court can avoid any Fifth Amendment problem by scheduling his trial after sentencing his codefendants (assuming they are convicted). Doc. 104 at 4. However, "[a] defendant who has been convicted does not necessarily lose the Fifth Amendment right against self-incrimination as it concerns facts and circumstances surrounding the crime." *United States v. Mathews*, 997 F.2d 848, 850 n.4 (11th Cir. 1993); *see also United States v. Vangates*, 287 F.3d 1315, 1320 (11th Cir. 2002) (the Fifth Amendment "permits a witness to refuse to answer any question put to him unless and until he is protected at least against the use of his compelled answers . . . in any subsequent criminal case in which he is a

defendant") (quotation omitted).[2] And, in the absence of specifics regarding the substantive testimony Roberson expects from his codefendants, the court is unable to assess whether any Fifth Amendment concerns would remain even if it provided Roberson with the relief he requests.

Finally, even if Roberson had succeeded in making the requisite threshold showing, his motion is due to be denied because of his failure to show that severance is proper.[3] Roberson's motion boils down to a belief, albeit without any substantive proof, that his codefendants would provide compelling testimony on his behalf. Even if true, "defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials." *Zafiro*, 506 U.S. at 540. Instead, Roberson must put forward adequate evidence to meet his burden of showing that the denial of his motion would cause "specific and compelling prejudice to the conduct of his defense." *Schlei*, 122 F.3d at 984 (quotation omitted). He has failed to do so on the record presently before the court and, consequently, he is unable to overcome the judicial system's efficiency interest in

---

[2] Even after sentencing, the defendant can assert the Fifth Amendment privilege in related proceedings during her appeal because any offered testimony "could potentially prejudice [the defendant] either in connection with [the] appeal or a possible retrial." *Sterling Nat'l Bank v. A-1 Hotels Int'l, Inc.*, No. 00 Civ. 7352(GEL), 2004 WL 1418201, at *1 (S.D.N.Y. June 23, 2004) (collecting cases).

[3] If the defendant makes the required initial showing, "the district court must [still]: '(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion.'" *Green*, 818 F.3d at 1280 (quoting *Novaton*, 271 F.3d at 989).

favor of a joint trial. *See Novaton*, 271 F.3d at 991 (noting the "substantial systemic interest in handling [a] complex, conspiracy case in one trial"); *Pepe*, 747 F.2d at 651 (noting the "savings in time and resources produced by holding a joint trial in . . . a complex conspiracy case").

While Roberson argues that the court might save time and resources in the event that his codefendants are acquitted and the government declines to prosecute him individually, there are no such guarantees. Regardless of the outcome of a hypothetical initial proceeding involving his codefendants, a significant possibility exists that the court will be forced to expend critical resources conducting another complex, multi-week trial essentially duplicating the initial proceeding while increasing the risk of inconsistency and unfairness. *See Lopez*, 649 F.3d at 1233 (noting the important interests served by joint trials including "reduc[ing] the risk of inconsistent verdicts and the unfairness inherent in serial trials"). Therefore, in light of Roberson's failure to show an entitlement to severance, and consistent with the general rule that codefendants in a conspiracy case are tried together, the court declines to grant his motion on these grounds.

*B. Whether Separate Trials are Necessary to Protect Roberson's Confrontation Clause Rights*

The Confrontation clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against [her]." U.S. Const. amend. VI. In *Bruton v. United States*, 391 U.S. 123 (1968), the Supreme

Court held "that a defendant is deprived of [her] rights under the Confrontation Clause when [her] nontestifying codefendant's confession naming [her] as a participant in the crime is introduced at their joint trial, even if the jury is instructed to consider that confession only against the codefendant." *Richardson v. Marsh*, 481 U.S. 200, 201–02 (1987). However, this represents a narrow exception to the general rule that "a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant." *Id.* at 206–07. Accordingly, *Bruton* does not "'bar the admission into evidence of every relevant extrajudicial statement made by a nontestifying declarant simply because it in some way incriminates the defendant.'" *United States v. Arias*, 984 F.2d 1139, 1142 (11th Cir. 1993) (quoting *Parker v. Randolph*, 442 U.S. 62, 73 (1979)). Indeed, the Supreme Court has expressly held that "the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence." *Marsh*, 481 U.S. at 211.

In other words, when "additional, independent evidence is needed" to infer guilt, providing "the jurors with the independent evidence needed . . . does not create a *Bruton* violation." *United States v. Williamson*, 339 F.3d 1295, 1303 (11th

Cir. 2003). Instead, the Eleventh Circuit "has read *Bruton* to exclude only those statements by a non-testifying defendant which directly inculpate a co-defendant." *Beale*, 921 F.2d at 1425; *see also Gray v. Maryland*, 523 U.S. 185, 192 (1998) (explaining that *Bruton* held that "certain 'powerfully incriminating extrajudicial statements of a codefendant'. . . are so prejudicial that limiting instructions cannot work") (quoting *Marsh*, 481 U.S. at 207). Stated differently, "a defendant's confrontation right is violated when the court admits a codefendant statement that, in light of the Government's whole case, compels a reasonable person to infer the defendant's guilt." *United States v. Schwartz*, 541 F.3d 1331, 1351 (11th Cir. 2008).

Turning to the specifics here, although the Government plans to admit the testimony given by Roberson's codefendants before the grand jury, neither party has specifically identified any statements that "powerfully incriminate" Roberson. *See Gray*, 523 U.S. at 192. Roberson instead relies on his concerns about the Government's theory of the case—that Roberson's employer, through Roberson, hired his codefendants as legal counsel and the three individuals took a series of illegal actions through their relationship. Roberson believes that as the client contact dealing directly with his codefendants, the jury would automatically infer that he participated in any illegal actions they may have taken. Doc. 104 at 8. But, the general relationship between Roberson and his codefendants, standing alone, is

not "clearly inculpatory." *Arias*, 984 F.2d at 1142 (quotation omitted). The court does not believe that a layperson's engagement of, or interaction with, legal counsel who allegedly engaged in criminal conduct related to the engagement automatically compels a reasonable person to infer the layperson's guilt. *Schwartz*, 541 F.3d at 1351. Instead, the circumstances here serve as a quintessential example of the need for additional evidence to establish an individual's specific involvement in the purportedly illegal actions taken by his codefendants. In short, the relationship between Roberson and his codefendants is too attenuated to necessarily incriminate Roberson via testimony related to his codefendants' actions without specifically mentioning Roberson's involvement in the alleged conduct. *See, e.g.*, *United States v. Espinoza*, 635 F. App'x 739, 751 (11th Cir. 2015) (explaining that "[n]o *Bruton* problem exists where the statement 'was not incriminating on its face, and became so only when linked with evidence introduced later at trial'") (quoting *Marsh*, 481 U.S. at 208).

Moreover, the court is not convinced that *Bruton* directly reaches these facts. *Bruton* primarily encompasses situations when "a co-defendant, in a statement insulated from cross-examination, 'points the finger' at a defendant either by mentioning her by name or otherwise making a statement that is 'powerfully incriminating.'" *United States v. Blanc*, No. 4:15CR23-MW/CAS, 2016 WL 9185303, at *2 (N.D. Fla. Apr. 14, 2016) (citing *Schwartz*, 541 F.3d at 1348). This

was the concern animating the Eleventh Circuit's decision in *Schwartz*, which explained that *Bruton* applies when a court admits a "codefendant statement that, in light of the Government's whole case, compels a reasonable person to infer the defendant's guilt." *Schwartz*, 541 F.3d at 1351. More specifically, the *Schwartz* court addressed the admissibility of a lengthy affidavit that "summarized in one streamlined and articulate statement all of the Government's evidence [against the defendant] . . . all without expressly naming him." *Id.* at 1352. The affidavit, however, referred *expressly* to corporate entities owned or controlled by the defendant, and because the Government presented evidence establishing the defendant's "ownership and control" of the named companies, the court found that the "affidavit obviously refer[ed] to [the Defendant]." *Id.* (quotation omitted).

Roberson, on the other hand, has not cited any such testimony from his codefendants. Instead, he seems to argue only that his role as the client contact for his codefendants and the inferences, if any, the jury can draw from that role are sufficiently incriminating to trigger *Bruton*. To the extent Roberson points at statements made by his codefendants related to their professional interactions with Roberson, however, that testimony does not, on its face, "point[] the finger" at Roberson, and it certainly does not amount to a confession of criminal conduct. *See Arias*, 984 F.2d at 1143 (finding no *Bruton* violation because redacted statements from codefendants did not show that a crime was committed and only

became incriminating in conjunction with other evidence). In short, the issues Roberson raises lie far outside the narrow heartland of *Bruton*, which does not "bar the admission into evidence of every relevant extrajudicial statement made by a nontestifying declarant simply because it in some way incriminates the defendant." *Id.* at 1142 (quotation omitted).

In any event, the court need not definitively rule on this issue because the parties have not expressly identified specific codefendant statements that the Government plans to introduce at trial, making it impossible for the court to determine whether those statements violate Roberson's Sixth Amendment rights. Therefore, in light of the Government's agreement to review and redact the grand jury testimony it proposes to introduce at trial, *see* doc. 73 at 9, the court will review the Government's redactions *in camera* for any potential *Bruton* issues. Pending such a review, the court declines to grant Roberson's motion to sever based on a hypothetical Sixth Amendment violation. In the event the court's review reveals that the Government seeks to introduce "powerfully incriminating" statements made by Roberson's codefendants at trial, the court will consider first whether viable alternatives to severance exist to avoid a *Bruton* problem, including doing without the challenged testimony. *See Schwartz,* 541 F.3d at 1352 n.64.

## CONCLUSION AND ORDER

Subject to the court revisiting the issue after its *in camera* review of statements made by Roberson's codefendants before the grand jury, Roberson's motion, doc. 59, is **DENIED** in light of the powerful systemic interests in conducting joint trials in complex conspiracy cases, the general presumption that those that are indicted together are tried together, and Roberson's failure to meet his burden of "'demonstrat[ing] that a joint trial will result in specific and compelling prejudice to the conduct of his defense.'" *Schlei*, 122 F.3d at 984 (quoting *Walker*, 720 F.2d at 1533). The Government is **ORDERED** to produce to Judge T. Michael Putnam the redacted statements for *in camera* review by May 21, 2018.

**DONE** the 4th day of May, 2018.

Abdul Kallon

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE