UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| vs. | ) Civil Action Number |
| | ) 2:17-cr-00419-AKK-TMP |
| JOEL IVERSON GILBERT, | ) |
| STEVEN GEORGE MCKINNEY, | ) |
| and DAVID LYNN ROBERSON, | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

The court presently has before it Steven McKinney's Motion to Dismiss the Indictment for Prosecutorial Misconduct and for Disclosure of Grand Jury Evidence, doc. 65, and Joel Gilbert's Motion to Dismiss for Prosecutorial Misconduct Before the Grand Jury, doc. 66, which the other defendants have adopted. *See* Doc. 108. Accordingly, the court will address these motions together, but notes that McKinney's motion generally involves arguments that are unique to him. After carefully considering the record, the relevant law, and the parties' briefs, *see* docs. 65; 66; 79; 80; 102; and 105, both motions are due to be denied.

## I. LEGAL STANDARD

A grand jury proceeding is cloaked in a presumption of regularity that "'generally may be dispelled only upon particularized proof of irregularities in the grand jury process.'" *United States v. R. Enters., Inc.*, 498 U.S. 292, 301 (1991) (quoting *United States v. Mechanik*, 475 U.S. 66, 75 (1986) (O'Connor, J., concurring)). As the Supreme Court has explained, "[n]othing could be more destructive of the workings of our grand jury system or more hostile to its historic status" than casting "upon the [G]overnment the affirmative duty of proving such regularity." *United States v. Johnson*, 319 U.S. 503, 512–13 (1943). However, certain abuses of the grand jury process, "such as perjury or government misconduct," *United States v. DiBernardo*, 775 F.2d 1470, 1475 (11th Cir. 1985), potentially justify the dismissal of an indictment given the requisite "particularized proof." *Mechanik*, 475 U.S. at 75 (O'Connor, J., concurring).

"'[D]ismissal of an indictment for prosecutorial misconduct is an extreme sanction which should be infrequently utilized.'" *United States v. Accetturo*, 858 F.2d 679, 681 (11th Cir. 1988) (quoting *United States v. Pabian*, 704 F.2d 1533, 1536 (11th Cir. 1983)). "[T]o establish prosecutorial misconduct for the use of false testimony, a defendant must show that the prosecutor knowingly used perjured testimony or failed to correct what [she] subsequently learned was false testimony, and that the falsehood was material." *United States v. Cavallo*, 790

F.3d 1202, 1219 (11th Cir. 2015). Even if prosecutorial misconduct is established, in the unique context of a grand jury proceeding, it is appropriate to dismiss an indictment only when the misconduct "'substantially influenced the grand jury's decision to indict'" or creates "'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (quoting *Mechanik*, 475 U.S. at 78 (O'Connor, J., concurring)). Significantly, "a prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct." *United States v. McNair*, 605 F.3d 1152, 1208 (11th Cir. 2010); *see also United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (explaining that "due process is not implicated by the prosecution's introduction or allowance of false or perjured testimony unless the prosecution actually knows or believes the testimony to be false or perjured; it is not enough that the testimony is challenged by another witness or is inconsistent with prior statements").

Further, the Government is under no obligation "to present exculpatory evidence in [its] possession" to the grand jury. *United States v. Williams*, 504 U.S. 36, 52 (1992). Such a requirement is "incompatible" with the grand jury's role of assessing "whether there is [an] adequate basis for bringing a criminal charge" not determining "guilt or innocence." *Id.* at 51–52. "[T]he mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment," and "a

3

challenge to the reliability or competence of the evidence presented to the grand jury" is improper. *Bank of Nova Scotia*, 487 U.S. at 261. The "[r]eview of facially valid indictments on such grounds 'would run counter to the whole history of the grand jury institution[,] [and] [n]either justice nor the concept of a fair trial requires [it].'" *Williams*, 504 U.S. at 54–55 (quoting *Costello v. United States*, 350 U.S. 359, 364 (1956)).

## II. ANALYSIS

The Defendants raise numerous challenges to the evidence presented to the grand jury, broadly centering around testimony related to McKinney's role in the charged conspiracy and the actions allegedly taken by former Alabama state legislator Oliver Robinson at the behest of the Defendants. The Defendants do not expressly argue that the Government suborned perjury. Instead they argue that the Government's presentation of inaccurate and misleading testimony, without subsequent correction, deprived them of their Fifth Amendment right "to indictment by an unbiased grand jury," *United States v. Hyder*, 732 F.2d 841, 842 (11th Cir. 1984), or, at the least, created a "grave doubt that the decision to indict was free" from the substantial influence of the Government's purported misconduct. *Bank of Nova Scotia*, 487 U.S. at 263. In the court's view, most of the Defendants' arguments rely on the existence of evidence contradicting the Government's assertions before the grand jury or an alternative interpretation of

4

what the evidence fairly shows. Given this framing, the court is within its right to summarily dismiss the Defendants' arguments because "a challenge to the reliability or competence of the evidence presented to the grand jury" is improper. *Id.* at 261. To the extent that the Defendants' challenge amounts to a mere disagreement with the Government regarding what the evidence shows or whether the evidence supports the charges in the indictment, their arguments do not present a proper basis for setting the indictment aside. Keeping this in mind, the court now addresses each of the Defendants' motions in turn.

**A. McKinney's Motion**

Broadly speaking, McKinney primarily takes issue with the Government's supposed failure to expressly identify his purportedly more attenuated involvement in the conduct underlying the charges in this case. Doc. 105 at 4–5. To support this contention, McKinney primarily cites the grand jury testimony of FBI Agent Ashley Hunt as overstating his role in the actions taken by his codefendants.[1] However, the Government is not obligated to explain evidentiary distinctions to the grand jury or to provide the grand jury with potentially exculpatory evidence in its possession. *Williams*, 504 U.S. at 52. At this stage of the case, "a defendant cannot challenge whether there is a sufficient evidentiary foundation to support the

---

[1] McKinney generally challenges Agent Hunt's testimony with respect to his involvement in: (1) the development of an alleged strategy to use Oliver Robinson to oppose EPA action in North Birmingham; (2) contracting with Robinson; (3) directing Robinson to take certain actions; and (4) Robinson's vote on a Joint Resolution opposing the EPA investigation in Birmingham. Doc. 65 at 3–8, 12–13.

5

grand jury's probable cause determination." *United States v. Kaley*, 677 F.3d 1316, 1326 (11th Cir. 2012).

In any event, a cursory review of Agent Hunt's grand jury testimony belies McKinney's contentions regarding its purported falsity. For example, with respect to Agent Hunt's testimony that McKinney assisted in developing a strategy of advising residents and public officials to oppose the EPA's actions, doc. 65 at 3, McKinney's own billing records from February 2015 reference his involvement in such a strategy. *Id.* at 4 n.2; Doc. 80 at 12.[2] And, as the Government points out, McKinney's testimony reveals that he routinely met with public officials to "address . . . issues . . . [and to] build consensus about how to deal with [them]." Doc. 80 at 10. McKinney also testified that he "agreed with the idea that we needed a contractor," doc. 105 at 16, and the Government presented other evidence suggesting that McKinney reviewed both the contract to engage Robinson and Robinson's initial community outreach proposal, in addition to approving the first payment to Robinson's Foundation. Docs. 80 at 11; 105 at 11–12. While

---

[2] That the alleged conspiracy had already begun by the time McKinney's billing records reflect his involvement in any "strategy" is immaterial because defendants can join a conspiracy at different times. *See United States v. Prescott*, 672 F.2d 882, 886 n.4 (11th Cir. 1982) (rejecting defendant's contention that he was not a part of a conspiracy because he was not present when the scheme began). Indeed, a defendant can be found guilty of conspiracy if she had "a general understanding of the unlawful purpose of the plan and willfully joined in the plan on at least one occasion." *See* Eleventh Circuit Pattern Jury Instructions, Criminal Cases, Offense Instruction 13.1 Moreover, the challenged testimony never sets a time frame for McKinney's involvement; it simply alleges that he was part of the development of a strategy to pay Robinson for taking certain generally favorable positions to the Defendants and their client. The evidence described above adequately supports Agent Hunt's testimony in this regard.

McKinney may disagree with the characterization of this evidence, it is more than sufficient to support Agent Hunt's testimony regarding McKinney's involvement in a purported "strategy to pay Oliver Robinson . . . to take official action consistent with [the Defendants'] position related to the EPA." Doc. 65 at 3. Indeed, McKinney testified that developing strategies to work with the government and achieve favorable resolutions to problems is something that he and his law firm did "all the time." Doc. 80 at 10. McKinney's subsequent characterization of the evidence and his testimony that he was not specifically "involved in the choice of [the] Oliver Robinson Foundation" is insufficient to render Agent Hunt's testimony false or misleading. Doc. 105 at 16.

Similarly, McKinney's contention that Agent Hunt's testimony that McKinney discussed Robinson's contract was false because McKinney never directly interacted with Robinson is also unavailing. Doc. 65 at 6. As the Government notes, Agent Hunt never testified that McKinney spoke with Robinson, and McKinney has not cited any testimony contradicting this assertion. *See* Doc. 80 at 14–15. Rather, it appears that the evidence presented to the grand jury showed that McKinney reviewed the final contract offered to Robinson and approved payments under the contract to Robinson. *See* Docs. 80 at 11; 105 at 11–12. This evidence indicates that McKinney participated, at least to some degree, in the contract negotiation process, doc. 105 at 11, and, accordingly, the court cannot

7

say that Agent Hunt's testimony to that effect was false or misleading. Indeed, McKinney himself acknowledges that one of his codefendants sent him an email discussing the proposed agreement with Robinson. *See* Docs. 65 at 6–7. Thus, McKinney fails to demonstrate that "the prosecution actually [knew] or [believed] the testimony to be false or perjured." *Brown*, 634 F.2d at 827.

McKinney obviously believes that the Government's case is built on shaky foundations, and that the evidence provided to the grand jury is insufficient to convict him. He may ultimately prove correct in this belief, and he is certainly free at trial to develop exculpatory evidence and to attack the inconsistencies in the Government's evidence. However, the grand jury process is not intended to reach a decision regarding guilt or innocence, but instead assesses only "whether there is [an] adequate basis for bringing a criminal charge." *Williams*, 504 U.S. at 51. Thus, "a defendant cannot challenge whether there is a sufficient evidentiary foundation to support the grand jury's probable cause determination." *Kaley*, 677 F.3d at 1326. At this stage of the proceeding, "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello*, 350 U.S. at 363. Therefore, because McKinney has failed to show that testimony provided to the grand jury was misleading, let alone that it constituted prosecutorial misconduct sufficiently egregious that there is "grave doubt that the decision to indict was free from the

substantial influence of such violations," *Bank of Nova Scotia*, 487 U.S. at 256 (quotation omitted), his challenge to the validity of the indictment fails.[3]

**B. Gilbert's Motion**

Gilbert's motion similarly challenges Agent Hunt's testimony, primarily arguing that her assertions regarding Robinson's actions were either not supported by the evidence, contradicted by Robinson's prior interviews with the FBI, or improperly relied on hearsay. Secondarily, Gilbert argues that the Government failed to present evidence showing that Robinson performed an "official act" pursuant to his agreement with the Defendants. None of these arguments are sufficient to dispel the presumption of regularity cloaking the grand jury proceedings. *See R. Enters., Inc.*, 498 U.S. at 300–01.

1. *Alleged Reliance on Information Contradicted by Robinson's Prior Statements to the FBI*

The first issue Gilbert raises is that, despite the lack of an affirmative record of a vote, Agent Hunt testified that it was her understanding that Robinson voted to advance a resolution opposing the EPA's actions in the House Rules Committee of the Alabama legislature. Doc. 66 at 4. This fact is immaterial because, although Robinson initially told the FBI that he had not voted on the resolution, he

---

[3] As McKinney admits, the Government is under no duty to present exculpatory evidence to the grand jury. Doc. 65 at 16. Therefore, his arguments related to the failure to disclose contradictory prior witness statements or other exculpatory evidence also fail. *See Bank of Nova Scotia*, 487 U.S. at 261; *Williams*, 504 U.S. at 51–52.

subsequently admitted in his plea agreement that he "voted in committee to send the resolution to the floor." *Id.* at 4–6; 79 at 8–9. Robinson's contrary statements to the FBI simply do not implicate the validity of the indictment because "a prior statement that is merely inconsistent with a government witness's testimony is insufficient to establish prosecutorial misconduct." *McNair*, 605 F.3d at 1208. Moreover, the lack of a record of the vote is consistent with Agent Hunt's testimony to the grand jury that "there is no record" of a vote. *See* Doc. 66 at 4.

Similarly, the Government's failure to relay Robinson's initial statements to the grand jury is of no consequence because the Government is under no obligation to provide the grand jury with exculpatory evidence or to explain any inadequacies or weaknesses in the evidence that is presented. *See Bank of Nova Scotia*, 487 U.S. at 261 (concluding that "the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment"). In short, this record does not support Gilbert's contention that Agent Hunt made false or misleading statements to the grand jury warranting the "extreme sanction" of dismissing the indictment. *Accetturo*, 858 F.2d at 681 (quotation omitted).

*2. Alleged Improper Characterization of Robinson's Role*

In a similar vein, Gilbert takes issue with Agent Hunt's testimony identifying Robinson as part of the Defendants' strategy to oppose the EPA's proposed actions. According to Gilbert, Robinson told the FBI that he was tasked

with meeting state officials only to identify the parties responsible for contamination in the area the EPA was investigating, and that he was not instructed to take any actions seeking to limit the EPA investigation or any proposed action. Doc. 66 at 7. This contention misses the mark because Agent Hunt was not recounting to the grand jury something Robinson had purportedly said. Instead, she was presenting her own characterization of the evidence. As such, for the reasons explained above, Robinson's prior statements to the FBI are immaterial to the court's analysis. Moreover, Gilbert fails to identify any statement that actually contradicts Agent Hunt's testimony. For example, Robinson indicated to the FBI that he met with state officials to prevent the addition of the North Birmingham site to the EPA's National Priorities List rather than to prevent it from becoming a Superfund site. *Id.* at 8. This statement is perfectly consistent with Agent Hunt's testimony that Robinson participated in a strategy to advise public officials to oppose the EPA's proposed actions. *Id.* at 7. Additionally, Gilbert's focus on Robinson's statements to the FBI overlooks other evidence presented during the course of a ten month grand jury investigation involving 124 exhibits and testimony from sixteen witnesses. Doc. 79 at 6 n.2. Gilbert does not challenge this evidence or argue that it failed to support Agent Hunt's testimony or rendered that testimony false or misleading.

To summarize, Gilbert's feelings about the sufficiency or unreliability of the evidence underpinning Agent Hunt's testimony is not tantamount to prosecutorial misconduct, and it certainly is not grounds to set aside a facially valid indictment. *See Bank of Nova Scotia*, 487 U.S. at 261 (holding that "a challenge to the reliability or competence of the evidence presented to the grand jury" is not valid grounds for setting aside an indictment). Again, the grand jury's role is simply to assess "whether there is [an] adequate basis for bringing a criminal charge," rather than to establish guilt or innocence. *Williams*, 504 U.S. at 51. Gilbert's reliance on the inconsistent prior statements of a single witness is insufficient to demonstrate the absence of probable cause for an indictment and fails to show affirmative misconduct on the part of the Government.[4]

*3. Alleged Hearsay Testimony*

Gilbert also argues that Agent Hunt relied on hearsay, and that she misled the grand jury into believing that she had first hand knowledge of Robinson's intent to take certain actions and his awareness of the Defendants' purported plan to oppose the EPA's proposals. *See* Doc. 66 at 10, 12. This contention is also unavailing. The Supreme Court has expressly held that an indictment may be

---

[4] Prosecutorial misconduct requires a showing that "the prosecution actually knows or believes the testimony to be false or perjured." *Brown*, 634 F.2d at 827. The Defendants have not made such a showing here, and instead simply present contrary characterizations of the available evidence as evidence of substantive falsity. Similarly, that the Government did not reveal doubts about the strength of its evidence is irrelevant as it is under no duty to reveal exculpatory evidence to the grand jury. *See Williams*, 504 U.S. at 52, 54.

based entirely on hearsay evidence, explaining that there is no "rule permitting defendants to challenge indictments on the grounds that they are not supported by adequate or competent evidence . . . Neither justice nor the concept of a fair trial requires" such a rule. *Costello*, 350 U.S. at 364. Indeed, the use of hearsay is not a proper basis to set aside an indictment in the Eleventh Circuit. *See United States v. Waldon*, 363 F.3d 1103, 1109 (11th Cir. 2004) (explicitly finding that an indictment may "be based on read-backs and hearsay witnesses"). Moreover, the grand jury was not misled by Agent Hunt, who, as pointed out by the Government, expressly prefaced her remarks characterizing Robinson's state of mind when he took particular actions with the phrase "to me." Doc. 79 at 17. This phrasing clearly indicated that Agent Hunt was giving an opinion related to Robinson's knowledge of the alleged conspiracy and his underlying motivations based on the evidence she reviewed, and that she was not seeking to pass off her testimony as a "personal account."

    *4. Alleged Failure to Present Evidence of an Official Act*

    Finally, Gilbert raises a sufficiency of the evidence argument largely mirroring an argument independently raised in a separate motion to dismiss, *see* doc. 55, contending that the Government never presented the grand jury with evidence that Robinson took any "official actions" related to the parties' purported agreement. Doc. 66 at 14. Even accepting that Gilbert is correct that proof of an

13

official act is required to convict a defendant under 18 U.S.C. § 1343, he has still failed to show that the Government misled the jury or otherwise provided insufficient evidence to establish the existence of such an act. As the Government points out, Gilbert has offered no evidence in support of his claim beyond noting that the Government introduced evidence that Robinson took certain actions in his "official capacity."[5] There is no evidence before the court, however, that the Government instructed the grand jury that "official capacity" is synonymous with "official action," or that the Government instructed the grand jury as to the precise legal significance of testimony related to actions taken in Robinson's official capacity. It seems that the core of Gilbert's argument is that the Government failed to present sufficient evidence to establish an element of the offense before the grand jury, and not that the Government intentionally misled the jury regarding the legal elements of the charged offenses or elicited false testimony from witnesses. However, "[a]n indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for trial of the charge on the merits." *Costello*, 350 U.S. at 363. Put simply, "a defendant cannot challenge whether there is a sufficient evidentiary foundation to support the grand jury's probable cause determination." *Kaley*, 677 F.3d at 1326. Therefore, Gilbert's challenge to

---

[5] In his reply brief, Gilbert suggests that the Government misstated the law in its instructions to the grand jury. However, Gilbert fails to direct the court to the specific instruction in question, and offers no basis for this contention beyond pure speculation. *See* Doc. 102 at 14.

the evidentiary foundation underlying the grand jury's findings is foreclosed as a matter of law.

## **CONCLUSION AND ORDER**

The Defendants' motions are simply an attempt to recast a complaint about the quality or adequacy of the Government's evidence into "a complaint that the prosecutor's presentation was 'incomplete' or 'misleading.'" *Williams*, 504 U.S. at 54. While the Defendants' doubts regarding the strength of the Government's case may ultimately prove justified, such doubts do not provide an adequate justification for the dismissal of a facially valid indictment. *See Bank of Nova Scotia*, 487 U.S. at 261. Accordingly, for the reasons explained above, the Defendants' motions, docs. 65 and 66, are **DENIED**.

**DONE** the 4th day of May, 2018.

 _____
 **ABDUL K. KALLON**
 UNITED STATES DISTRICT JUDGE