# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| vs. ) | **Case Number** |
| ) | **2:17-cr-00419-AKK-TMP** |
| **JOEL IVERSON GILBERT and** ) | |
| **DAVID LYNN ROBERSON,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

The Government charged Joel Iverson Gilbert and David Lynn Roberson with six counts[1] arising from their alleged conspiracy to bribe Oliver Robinson, a former Alabama state legislator, to take actions to thwart the EPA's proposal to expand the 35th Avenue Superfund Site in north Birmingham and to add the Site to the National Priorities List ("NPL"). Doc. 1. A jury subsequently found the Defendants guilty on all six counts. Docs. 251 and 252. Presently before the court are the Defendants' Motions for Judgement of Acquittal Under Rule 29(c) or, alternatively, for a New Trial Under Rule 33(a). Docs. 266 and 267. After careful review of the briefs and the relevant law, the court finds that substantial evidence supports the jury's verdict and that the motions are due to be denied.

---

[1] Conspiracy (count 1); Federal program bribery under 18 U.S.C. § 666(a)(2) (count two); honest services wire fraud (counts three-five); and money laundering conspiracy (count six). Doc. 1.

## I. LEGAL STANDARD

A district court may overturn the jury's verdict and enter a judgment of acquittal under Rule 29 only "if there is insufficient evidence to sustain the verdict." *United States v. Williams,* 390 F.3d 1319, 1324 (11th Cir. 2004). When deciding a Rule 29 motion, the "court must view the evidence in the light most favorable to the government, . . . resolve any conflicts in the evidence in favor of the government, [] and [] accept all reasonable inferences that tend to support the government's case." *United States v. Ward*, 197 F.3d 1076, 1079 (11th Cir. 1999) (citations omitted). "A conviction must be upheld unless the jury could not have found the defendant guilty under any reasonable construction of the evidence." *United States v. Frank,* 599 F.3d 1221, 1233 (11th Cir. 2010) (quotation omitted). Because the jury is "free to choose between or among the conclusions to be drawn from the evidence presented at trial," the evidence "need not rebut all reasonable hypotheses other than guilt." *United States v. Miranda,* 425 F.3d 953, 959 (11th Cir. 2005) (quotation omitted).

## II. ANALYSIS

Roberson argues for an acquittal or new trial on five grounds: (1) the joint trial of this case unfairly prejudiced his advice of counsel defense, (2) there was insufficient evidence that Robinson performed any official acts, (3) there was insufficient evidence of Roberson's corrupt or fraudulent intent, (4) the court's jury

instructions were erroneous and prejudicial, and (5) the verdict is contrary to the weight of the evidence. Doc. 266. Gilbert joins in Roberson's second, fourth, and fifth arguments. Doc. 267. The court addresses first the two arguments that pertain only to Roberson's motion and then the Defendants' collective remaining arguments.

    A.    <u>Whether the Joint Trial Unfairly Prejudiced Roberson's Advice of Counsel Defense</u>

As his first contention of error, Roberson renews his objection to the court's denial of his motions to sever.[2] Roberson contends that the joint trial substantially prejudiced his defense because, in order to protect Gilbert's rights under the Confrontation Clause, the court precluded Roberson from introducing a purportedly exculpatory portion of his pre-indictment interview with the FBI. Doc. 266 at 25; *see also* doc. 284 at 71-74; *Bruton v. United States*, 391 U.S. 123 (1968). Roberson contends that the omitted portion would have been admissible in a separate trial under the rule of completeness. Doc. 266 at 25, 27-29.

At issue here is a redacted version of FBI Agent Ashley Hunt's written summary of Roberson's interview with the FBI. Doc. 284 at 13-28. The redacted summary that Agent Hunt read into evidence omitted the highlighted sentences from the following paragraph:

---

[2] The court denied Roberson's motions to sever his trial from Gilbert's. *See* docs. 59; 115; 284 at 73-74.

> After the Hubbard trial, Roberson considered what they were doing, i.e., contracting with a state representative, in light of the ethics law but determined that the area targeted by the campaign was not in Robinson's district. Roberson stated that they (Drummond) have always been very careful, and he (Roberson) has a reputation to maintain. ==Roberson had a conversation with Gilbert about ethics considerations. Roberson wanted to know if it was a problem for him (Roberson) to be associated with the effort because he was a lobbyist. Gilbert later told Roberson that he checked with Greg Butrus and Chad Pilcher at Balch, and there was no problem with what they were doing.==

Doc. 266-2 at 7 (emphasis added); *see also* doc. 284 at 20. The court allowed Agent Hunt to read only the first two sentences, doc. 284 at 20, excluding the rest of the paragraph pursuant to *Bruton* to protect Gilbert's right to confront his accusers, *id.* at 71-74. Roberson argues that the decision violated the rule of completeness and substantially prejudiced his advice of counsel defense.

Under the rule of completeness, which is memorialized in Rule 106 of the Federal Rules of Evidence, "the exculpatory portion of a defendant's statement should be admitted if it is relevant to an issue in the case and necessary to clarify or explain the portion received." *United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005), *abrogated on other grounds by Davis v. Washington*, 547 U.S. 813, 821 (2006) (citations omitted). However, "when multiple defendants are involved and statements have been redacted to avoid *Bruton* problems, the 'rule of completeness' is 'violated only when the statement in its edited form . . . effectively distorts the meaning of the statement or excludes information

substantially exculpatory of the nontestifying defendant.'" *United States v. Range*, 94 F.3d 614, 621 (11th Cir. 1996) (quoting *United States v. Lopez,* 898 F.2d 1505, 1511 n.11 (11th Cir.1990)). In other words, the exclusion of a portion of a statement that may be admissible in a separate trial does not automatically violate the rule of completeness. *See id.*

The exclusion of the redacted sentences here did not violate the rule for several reasons. First, it is not clear how the sentences that the court admitted directly relate to the excluded sentences. Roberson's statement that he talked to Gilbert and "wanted to know if it is a problem for him (Roberson) to be associated with the effort because he was a lobbyist" has no clear connection to Roberson's earlier statement regarding his "determin[ation] that the area targeted by the [advocacy] campaign was not in Robinson's district." *See* docs. 266-2 at 7; 284 at 20. Although the omitted sentences may further explain Roberson's consideration of the legality of the Defendants' conduct in light of the ethics law, the redacted version of the interview summary did not distort the meaning of Roberson's statement to the FBI.

Second, even if Roberson is correct that the redacted statement gave the jury the impression that he did not rely on any legal advice regarding the lawfulness of his conduct, doc. 266 at 25-26, the alleged error is harmless because other witnesses' testimony dispels that potential impression. Specifically, Mark Tracy,

5

the CEO of Drummond Company, testified that Gilbert advised him, Roberson, and other Drummond executives at a meeting in late 2014 that Gilbert "had run [the hiring of Robinson's foundation] through [his firm's] legal department and their ethics department and that everything was fine." Doc. 277 at 78-81. Gilbert also testified that he had indeed advised those present at the meeting that the contract with Robinson's foundation complied with the law and that he had vetted the contract with his partners who specialize in ethics law. Doc. 287 at 65-67. In light of this testimony, the redacted version of Roberson's interview with the FBI did not distort the meaning of Roberson's statement by giving the impression that Roberson assessed the legality of the engagement solely on his own.

Third, the redacted statement did not severely prejudice Roberson's advice of counsel defense by, as Roberson contends, omitting the only direct evidence that he "turned to counsel for advice, which strongly implies that he relied on it," doc. 266 at 31. The advice of counsel defense required evidence that Roberson, "<u>before acting</u>: [1] made a full and complete good-faith report of all material facts to an attorney he considered competent; [2] received the attorney's advice as to the specific course of conduct that was followed; and [3] reasonably relied upon that advice in good faith." Doc. 249 at 33 (emphasis added); *see also United States v. Eisenstein*, 731 F.2d 1540, 1543-44 (11th Cir. 1984). Here, however, the paragraph at issue begins with a statement that "[a]fter the Hubbard trial, Roberson

considered what they were doing, i.e., contracting with [Robinson] in light of the ethics law . . . ." Doc. 266-2 at 7 (emphasis added). But, by June 2016 when the Hubbard trial ended,[3] the essential acts of the conspiracy had already transpired, including the execution of the contract with Robinson's foundation in February 2015, Robinson's meetings with the EPA and AEMC in December 2014 and February 2015, and the vote on the joint resolution (SJR-97) in May 2015. Consequently, statements about conversations Roberson had with Gilbert in or after June 2016 do not suggest that Roberson received or relied on advice from Gilbert or other attorneys before participating in the acts that form the conspiracy.[4]

For all of these reasons, the redacted version of the summary of Roberson's interview with the FBI did not omit substantially exculpatory evidence or violate the rule of completeness. As a result, Roberson has failed to show that the joint trial substantially prejudiced his advice of counsel defense.

---

[3] A jury convicted former Alabama House Speaker Mike Hubbard on June 10, 2016, on twelve counts related to violations of Alabama state ethics law. *Alabama House Speaker Mike Hubbard convicted on 12 Counts*, al.com, June 10, 2016, *available at* www.al.com/news/index.ssf/2016/06/house_speaker_mike_hubbard_con.html.

[4] Roberson attempts to avoid that conclusion by arguing in his reply brief that his statement regarding his conversation with Gilbert is exculpatory no matter when the conversation occurred. Doc. 270-1 at 5. This contention is unavailing because "arguments raised for the first time in a reply brief are not properly before a reviewing court.'" *U.S. v. Khan*, 794 F.3d 1288, 1310, n.20 (11th Cir. 2015) (quoting *Herring v. Sec'y, Dept. of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005)) (alteration omitted). Moreover, even if Roberson is correct that evidence of his conversation with Gilbert in 2016 could have led a jury to infer that he acted in good faith in 2014 and 2015, the purported error is harmless in light of the evidence at trial that Roberson received advice from Gilbert in late 2014, *see* docs. 277 at 78-81; 287 at 65-67, which also could have led a jury, if it was so inclined, to infer Roberson acted in good faith.

B.  Whether the Evidence Proved Roberson Had Corrupt or Fraudulent Intent

Roberson also argues that there is insufficient evidence for a jury to conclude beyond a reasonable doubt that he acted with corrupt intent.[5] Doc. 266 at 59-75. As Roberson puts it, the evidence should have compelled the jury to find that he lacked corrupt intent based on his reasonable reliance in good faith on the advice of counsel. *Id.* at 61. But, "[m]atters of intent are for the jury to consider." *McCormick v. United States*, 500 U.S. 257, 270 (1991) (citations omitted). Here, the jury found that Roberson acted with corrupt and fraudulent intent and, in doing so, rejected his advice of counsel defense. In arguing that the jury erred, Roberson notes that the evidence admitted at trial shows that Gilbert advised him and other Drummond executives about the legality of hiring Robinson and his foundation to do community outreach work and represented that Gilbert's law partners had vetted the contract. Docs. 277 at 78-81; 287 at 65-67. Roberson overlooks, however, that the Government introduced evidence from which the jury could infer that Gilbert never advised Roberson about the legality of certain specific conduct, i.e., hiring Robinson to meet with the EPA, to speak at the AEMC meeting on Drummond's behalf, or to vote on SJR-97. Moreover, that the law firm's advice to Roberson purportedly never changed, *see* doc. 266 at 66-69, is irrelevant to the

---

[5] "To sustain the bribery convictions, the government must prove that [the Defendants] paid [Robinson] . . . with the corrupt intent to influence or reward." *United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1204 (11th Cir. 2009).

8

court's analysis. The court is tasked only with ascertaining whether there is sufficient evidence, viewed in the light most favorable to the Government, to sustain the jury's verdict. *See Miranda,* 425 F.3d at 959. Based on the record, the evidence admitted at trial allows a jury to reasonably infer that Roberson acted with corrupt intent.

Among other things, the trial evidence shows that Roberson met with Robinson in the summer of 2014 to discuss issues related to the Superfund Site and asked Robinson in a follow-up conversation if he knew Alabama Congresswoman Terri Sewell and then Birmingham Mayor William Bell well enough to approach them on behalf of his employer. Doc. 278 at 45-48. Robinson also testified that Roberson asked him to speak at the AEMC meeting and that he received $14,000 from the Defendants four days before the AEMC meeting. *Id.* at 29-30. Also, Roberson approved Robinson's request for a $7,000 per month payment the day before Robinson's meeting with the EPA. Doc. 211-13. Finally, the jury also heard evidence that the Defendants made effort to conceal the contract with Robinson's foundation. *See United States v. McNair*, 605 F.3d 1152, 1197 (11th Cir. 2010) (finding that evidence of "the extent to which the parties went to conceal their bribes is powerful evidence of their corrupt intent"). This evidence, viewed in the light most favorable to the Government, is sufficient to sustain the jury's finding that Roberson acted with corrupt and fraudulent intent.

9

C.     Whether There is Sufficient Evidence of Official Action

The Defendants rely on *McDonnell v. U.S.*, 136 S. Ct. 2355 (2016), to argue that the evidence is insufficient to show that they paid Robinson to take any official action. Docs. 266 at 35-59; 270-1 at 7-11; *see also* doc. 233-1. A conviction of bribery based on honest services fraud required that the jury find beyond a reasonable doubt that the Defendants gave Robinson something of value "with the expectation that [Robinson] would perform an 'official act' in return." *See McDonnell*, 136 S. Ct. at 2371.[6] And, as discussed in the order denying the motion to dismiss the indictment, doc. 109,[7] proving an "official act" requires the Government to (1) identify a specific "question, matter, cause, suit, proceeding or controversy" that "involves a formal exercise of governmental power" and (2) show that the public official acted or agreed to act on the matter. *McDonnell*, 136 S. Ct. 2372. "Setting up a meeting, talking to another official, or organizing an

---

[6] The Defendants argue that they are entitled to an acquittal in the absence of an official act. Doc. 266 at 14-16, 36, n.6. The Defendants' argument on this point is unavailing because, as explained in the order denying the motion to dismiss the indictment, Section 666, the federal program bribery statute, does not contain an official act requirement. *See* doc. 109 at 18-20. Thus, even if the Government did not introduce sufficient evidence for a reasonable jury to find that Robinson committed, or agreed to commit, an official act, the Defendants would not be entitled to an acquittal on the federal program bribery and conspiracy counts. *See United States v. Jackson*, 688 Fed. Appx. 685, 695 (11th Cir. 2017); *United States v. McNair*, 605 F.3d 1152, 1190-91 (11th Cir. 2010).

[7] The court found, among other things, that the indictment sufficiently alleged that the Defendants paid Robinson to take official acts. Doc. 109. The court adopts and incorporates by reference its analysis of the official act requirement for bribery based on honest services fraud. *See id.* at 7-18.

event (or agreeing to do so)—without more—does not fit [the] definition of 'official act.'" *Id.* However, "[i]f an official sets up a meeting, hosts an event, or makes a phone call on a question or matter that is or could be pending before another official, that could serve as evidence of an agreement to take an official act." *Id.* at 2371.

### 1. Meeting with the EPA

Viewing the evidence in the light most favorable to the Government, the evidence is sufficient for a jury to find beyond a reasonable doubt that the Defendants intended for Robinson to use his position to perform official acts. First, the EPA's proposal to expand the Superfund Site and add the Site to the NPL was a pending question or matter involving the formal exercise of governmental power when Robinson met with the EPA. *See* doc. 109 at 10. The evidence at trial reveals that the Defendants: (1) knew Robinson was meeting with the EPA due to his position as a state representative, doc. 211-10; (2) believed that Robinson would meet with the EPA Regional Administrator, doc. 211-12; (3) gave Robinson a list of questions to discuss at the meeting, doc. 211-14; and (4) agreed to pay Robinson's foundation $7,000 per month the day before the meeting, doc. 211-13. The questions the Defendants gave Robinson included asking about the state's position on adding the Superfund Site to the NPL and the EPA's decision to seek to make other companies help with the cleanup efforts. *See* doc. 211-14 at 2. The

jury could reasonably find that the scripted questions went beyond merely expressing support for a particular policy, and were designed to inform the EPA that Robinson and the State disagreed with the EPA's remedial actions. Viewing the evidence in the light most favorable to the Government, because a Superfund-financed remedial action required certain "assurances" from the State to proceed, *see* 42 U.S.C. §§ 9604, 9605, the jury could have reasonably inferred that the Defendants intended to pay Robinson in exchange for his agreement to perform an official act by pressuring or advising the EPA to take actions favorable to the Defendants' client with respect to the Superfund Site.

### 2. Presentation to the AEMC

The evidence also belies the Defendants' contention that Robinson's meeting with the AEMC cannot qualify as an official act. The Defendants argue that there was no pending matter or question before the AEMC because the State, through ADEM, had already notified the EPA that it opposed adding the Superfund Site to the NPL. Docs. 266 at 47-50; 233-1 at 7-9. But, an email Gilbert sent to Roberson after Robinson's appearance before the AEMC in which Gilbert acknowledged that ADEM was still in negotiations with the EPA regarding the Superfund Site and expressed concern that ADEM may "throw in the towel," doc. 253-26, undermines the Defendants' argument. Viewing the EPA's response to ADEM's formal comments and Gilbert's email in the light most favorable to the

12

Government, the jury could correctly find that the State's potential concurrence with adding the Superfund Site to the NPL was still a pending matter when Robinson met with the AEMC.

As for the Defendants' alternate contention that the evidence is insufficient to show that Robinson pressured or advised the AEMC to take any particular action on the matter, doc. 266 at 50-53, the court must ascertain only whether sufficient evidence exists to sustain a finding that the Defendants *intended* for Robinson to pressure or advise the AEMC. Relevant here, the evidence shows that: (1) Gilbert drafted a letter for Robinson to sign requesting the opportunity to provide comments at the AEMC meeting as a state legislator, doc. 211-1; (2) the Defendants persuaded Robinson to speak on their behalf at the meeting after Robinson expressed reluctance, doc. 211-31; (3) with Roberson's knowledge, Gilbert finalized the contract with Robinson's foundation in the days before the meeting, docs. 211-2; 253-12; (4) the Defendants paid Robinson's foundation $14,000 shortly before the meeting, docs. 211-3; 211-37; and (5) the Defendants met with Robinson to help him prepare his comments. The Defendants also surreptitiously taped Robinson's presentation to the AEMC, which the jury could have interpreted as further proof that the Defendants wanted to determine whether Robinson performed as directed at the meeting. Taken together and viewed in the light most favorable to the Government, this evidence is sufficient to allow the jury

to reasonably infer that the Defendants intended for Robinson to perform an official act by advising the AEMC, which has oversight responsibilities over ADEM, to take action favorable to the Defendants' client with respect to the State's potential concurrence with adding the Superfund Site to the NPL.

### 3. Voting on the Joint Resolution

The Defendants argue next that there is insufficient evidence to show that Robinson voted on SJR-97, or that they paid Robinson for his vote. Doc. 266 at 55-57. As the Court noted in its order denying the motion to dismiss the indictment, "*McDonnell* did not disturb the well-accepted 'retainer' theory of bribery . . . ." Doc. 109 at 18, n.9. Under this theory, the Defendants may be found guilty of bribery if the evidence is sufficient to show that Robinson "'underst[ood] that he [was] expected, as a result of [the Defendants'] payment, to exercise particular kinds of influence or to do certain things connected with his office as specific opportunities [arose].'" *United States v. Repak*, 852 F.3d 230, 251 (3rd Cir. 2017) (quotation omitted). Viewing the evidence in the light most favorable to the Government, the jury could have concluded that Robinson understood that the Defendants expected him to take official actions favorable to their client, such as voting on SJR-97, as opportunities arose. Indeed, Gilbert drafted SJR-97, which urges ADEM to oppose the EPA's efforts to add the Superfund Site to the NPL, doc. 253-3, knowing that Robinson would have an

opportunity to vote on it in the House Rules Committee and in the full House. The contract between Robinson's foundation and Gilbert's firm, which requires Robinson to act only in the firm's interest with respect to matters related to the Superfund Site, and Robinson's testimony that he voted in the Rules Committee to send SJR-97 to the full House, are sufficient to allow the jury to find the Defendants guilty of honest services bribery based on the retainer theory.

        D.        <u>Whether the Court's Jury Instructions were Erroneous and Prejudicial</u>

The Defendants argue next that the court's jury instructions were erroneous and prejudicial. Doc. 266 at 75-91. Jury instructions are erroneous if they would allow a jury to convict a defendant "for conduct that is not unlawful." *McDonnell*, 136 S. Ct. at 2375. The Defendants contend that the court's instructions contained three errors that may have caused the jury to convict them for engaging in lawful conduct. Doc. 266 at 18-21, 75-91.

First, the Defendants argue that the court erred by instructing the jury that it need not find an explicit agreement or quid pro quo to convict the Defendants of bribery. *Id.* at 75-82. The court has already rejected this contention. *See* doc. 109 at 18, n.9; *see also* doc. 269 at 38. As the court noted, the retainer theory of bribery, which does not require proof of an explicit agreement or quid pro quo, is still viable after *McDonnell*. *See* section II(C)(3), *supra*. In that respect, this case is distinguishable from the cases the Defendants cite, i.e., *McCormick v. United*

*States*, 500 U.S. 257 (1991) and *United States v. Siegelman*, 640 F.3d 1159 (11th Cir. 2011), neither of which involved an ongoing contract for services.

Second, the Defendants assert that the court erred by failing to "distinguish true 'official action' from non-official advocacy" when it purportedly failed to instruct the jury that an expression of support for a particular policy or action is not an official act. Doc. 266 at 82-88. Rather than giving the instruction the Defendants requested, the court used instead the pattern jury instruction definition of "official act," which is derived from *McDonnell* and accurately reflects the law. *See* doc. 249 at 24; 136 S. Ct. 2371-72. Moreover, informing the jury that "setting up a meeting [or] talking to another official" is not an official act, a statement taken directly from *McDonnell*, adequately instructed the jury that merely expressing support for a position is not an official act—which is precisely what the Defendants' own instruction was designed to convey. In other words, the court's instructions adequately covered the Defendants' requested charge. *See United States v. Svelte*, 556 F.3d 1157, 1161 (11th Cir. 2009) ("In considering the failure of a district court to give a requested instruction, the omission is error only if the requested instruction is [] not adequately covered by the charge given . . . .").

Third, the Defendants challenge the court's version of their theory of defense instruction. Doc. 266 at 89-91. In its instructions, the court gave the jury a summary of "the alleged official acts that the Government has charged in this

16

case," including that Robinson "made a public statement and pressured and advised the AEMC and the ADEM Director," "met with and advised EPA officials to take a position favorable to Balch [] and Drummond," and voted on SJR-97 as a member of the House Rules Committee. Doc. 249 at 15-16. The court then gave a theory of defense instruction, stating "[t]he Defendants deny these allegations, and maintain that [] Robinson took these actions on his own, that they are not official acts, and that Balch contracted with the [] Robinson Foundation for legitimate work." *Id.* at 16. The Defendants contend that the court gave the jury the false impression that they did not dispute that Robinson advised and pressured the EPA and AEMC. Doc. 266 at 89-91. To the contrary, by informing the jury that the Defendants deny the Government's allegations, the court adequately informed the jury that the Defendants deny that Robinson pressured or advised the AEMC and EPA.

      E.    <u>Whether the Jury's Verdict is Against the Weight of the Evidence</u>

The Defendants argue in the alternative that they are entitled to a new trial under Rule 33 because the verdict is against the weight of the evidence. Doc. 266 at 92-106. "On a motion for a new trial based on the weight of the evidence, the court need not view the evidence in the light most favorable to the verdict. It may weigh the evidence and consider the credibility of the witnesses." *Martinez*, 763 F.2d at 1312. However, to set aside the jury's verdict, the evidence must

preponderate so "heavily against the verdict [] that it would be a miscarriage of justice to let the verdict stand." *Id.* at 1313.

The Defendants raise four points in support of a new trial. First, the Defendants attack the evidence generally and characterize the Government's case as merely circumstantial based on timing and concealment. Doc. 266 at 93-94. But, as the Third Circuit recognized in *Repak*, rarely will there be written documents that provide direct evidence of an agreement between parties to bribe a public official or commit honest services fraud, and the Government may properly and persuasively rely on circumstantial evidence in bribery cases. *See Repak*, 852 F.3d at 251 (citations omitted). As for the Defendants' second contention that Robinson's testimony that he acted for personal reasons leaves room for reasonable doubt regarding if his actions were motivated by the Defendants' payments or the contract with his foundation, doc. 266 at 93-97, the relevant issue for the jury was whether the Defendants intended to bribe Robinson. As discussed above, the evidence admitted at trial is sufficient to sustain a finding beyond a reasonable doubt that the Defendants intended for Robinson to take official acts favorable to their client in exchange for the contract and the payments pursuant to it.

The Defendants' third contention, i.e. that their transparency regarding Robinson's work on their behalf "is inconsistent with the essential secret nature of a conspiracy," doc. 266 at 97 (citation omitted), is also not persuasive in light of

the evidence. Among other things: (1) the contract with Robinson's foundation mandated confidentiality; (2) in the letter Gilbert drafted for Robinson to sign and send to the AEMC, Gilbert represented that Robinson was acting "on behalf of the concerned citizens working and residing in North Birmingham," doc. 211-1, a contention Robinson repeated during his comments to the AEMC, doc. 253-20 at 12, and neither Gilbert nor Robinson informed the AEMC that Robinson was in fact acting on behalf of Balch and its client; and (3) the law firm's billing statements showed that the Defendants took efforts to conceal payments to Robinson's foundation. Put simply, there is sufficient evidence for the jury to reasonably conclude that the Defendants tried to conceal the true nature and extent of their activities involving Robinson.

Finally, the Defendants argue that the community outreach that Robinson's foundation did pursuant to the contract creates reasonable doubt regarding whether the contract and the payments constituted a bribe. Doc. 266 at 101-106. But, the jury heard the Defendants' evidence on this issue, and presumably, rejected the Defendants' contention that they engaged Robinson solely for legitimate community outreach work. Evidence admitted at trial—e.g. the timing of the approval of Robinson's request for $7,000 per month and the $14,000 payment under the contract, and several months of payments to Robinson's foundation for

19

work that consisted primarily of Robinson's attendance at the EPA and AEMC meetings—provides circumstantial evidence that supports the jury's verdict.

In light of all of the evidence and the considerable respect the court must give to the jury's verdict, the Defendants have not met their heavy burden of showing that denial of a new trial would result in a miscarriage of justice. As such, their motion for a new trial fails.

### III. CONCLUSION AND ORDER

Roberson's Motion for Leave to File Reply Memorandum of Law, doc. 270, and Gilbert's Motion to Join Roberson's motion, doc. 271, are **GRANTED**. And, for the reasons discussed above, the Defendants' Motions for an Acquittal or for a New Trial, docs. 266 and 267, are **DENIED**.

**DONE** the 22nd day of October, 2018.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE